Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

# UNITED STATES DISTRICT COURT

for the

**NORTHERN** District of **California**

Division

| | |
|---|---|
| Julia Teryaeva-Reed | Case No. ___3:24-cv-3910-AGT___ |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |
| **-v-** | |
| Colette S. Peters, et al. | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | |

FILED

JUN 28 2024

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Julia Teryaeva-Reed |
| All other names by which you have been known: | Julia Teryaeva |
| ID Number | 57914-037 |
| Current Institution | FDC Miami |
| Address | P.O. Box 019120 |
| | Miami      FL      33101 |
| | *City*     *State*     *Zip Code* |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Colette S. Peters |
| Job or Title *(if known)* | Bureau of Prisons Director |
| Shield Number | |
| Employer | Bureau of Prisons, DOJ |
| Address | 320 First St NW |
| | Washington     DC     20534 |
| | *City*     *State*     *Zip Code* |

☒ Individual capacity    ☒ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | William W. Lothrop |
| Job or Title *(if known)* | Deputy Bureau of Prisons Director |
| Shield Number | |
| Employer | Bureau of Prisons, DOJ |
| Address | 320 First St NW |
| | Washington     DC     20534 |
| | *City*     *State*     *Zip Code* |

☒ Individual capacity    ☒ Official capacity

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Defendant No. 3
    Name                 Kathleen Toomey
    Job or Title *(if known)*  Associate Bureau of Prisons Dep. Dir.
    Shield Number
    Employer          Bureau of Prisons, DOJ
    Address           320 First St NW

                   Washington     DC     20534
                   *City*          *State*     *Zip Code*

             [X] Individual capacity   [X] Official capacity

Defendant No. 4
    Name                 Melissa Rios - Marques
    Job or Title *(if known)*  Bureau of Prisons Western Regional Director
    Shield Number
    Employer          Bureau of Prisons, DOJ
    Address           7338 Shoreline Dr

                   Stockton      CA     95219
                   *City*          *State*     *Zip Code*

             [ ] Individual capacity   [ ] Official capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

    [X] Federal officials (a *Bivens* claim)

    [ ] State or local officials (a § 1983 claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by <u>state</u> or <u>local</u> officials?

N/A - this is Bivens claim

C.   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

Respondents violated and are continuing to violate Plaintiff's FIRST, FIFTH, EIGHTH, FOURTEENTH AMENDMENT RIGHTS.

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

N/A - this is Bivens action

## III.  Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐  Pretrial detainee

☐  Civilly committed detainee

☐  Immigration detainee

☐  Convicted and sentenced state prisoner

☒  Convicted and sentenced federal prisoner

☐  Other *(explain)*

## IV.  Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.  If the events giving rise to your claim arose outside an institution, describe where and when they arose.

Event took place on 4/15/2024 when Respondents issued order to close FCI-Dublin in violation of the court order and in retaliation to inmates exercising their FIRST AMENDMENT RIGHT to free speech and to access courts. (event took place presumably in Washington, DC - Bureau of Prisons HQ).

B.  If the events giving rise to your claim arose in an institution, describe where and when they arose.

Event took place on 4/18/2024 when Plaintiff was shipped out without medical clearance and without screening for release to community placement to FDC Miami where her constitutional rights are continued to be violated.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

C.     What date and approximate time did the events giving rise to your claim(s) occur?

On or about   4/18/2024   at approximately   10 am —
TILL PRESENT.

D.     What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Respondents issued an order to close FCI Dublin on 4/15/2024, and shipped Plaintiff without medical clearance and without screening for community placement, or transfer to correct BOP facility that meets Plaintiff's work, & programming & rehabilitative needs and closer to home on 4/18/2024. Plaintiff is now housed in FDC Miami, comparable to Supermax.

## V.     Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Plaintiff suffered colossal financial losses: her property, good job at UNICOR, other income. Transfer disrupted established social ties and adversely affected the processing of halfway house application/community release; resolution of ICE detainer, caused delays in filing motion for sentence reduction under USSC Am. 821 (Zero-Point/First Time Offender) that qualifies her for immediate Release; delay in re-filing motion for compassionate release that was previously granted by Court of Appeals, and prolonged her time in prison. She suffered minor injuries and emotional distress and is now detained in FDC Miami, comparable to Supermax - facility that houses mostly man and has no law library, no rec,

## VI.    Relief    NO RELIGIOUS SERVICES, NO JOBS and no meaningful rehabil./programming FOR WOMEN.     See attached MOTION and exhibits.

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Plaintiff is seeking $250,000.00 in punitive damages and $20,800.00 in compensatory damages; and to be released to halfway house/home confinement or to be transferred to correct BOP facility that corresponds to her work, programming and rehabilitative needs, FCI Tallahassee; She is also asking to appoint her an attorney and to award attorney fees as authorized under 28 USC § 1915.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## VII.    Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.     Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☒ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

FCI Dublin
5701 8th St
Dublin, CA 94568

B.     Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☐ Yes

☒ No      GRIEVANCE PROCEDURE was NOT available
          AFTER FCI-DUBLIN WAS CLOSED ON 4/15/2024

☐ Do not know

C.     Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☒ Yes

☐ No

☐ Do not know

If yes, which claim(s)?

THE CLAIMS BASED ON RETALIATORY and ILLEGAL transfer
THAT violated Plaintiff's constitutional RIGHTS and
Resulted in transfer to FDC-Miami, where her consti-
tutional Rights are continued to be violated.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☐ Yes

☒ No    Due to FCI-Dublin's closure and *unavailability* of Administrative Remedies

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☒ Yes

☐ No

E.    If you did file a grievance:

1.    Where did you file the grievance?

At FDC-Miami, Plaintiff's current detention facility, grievance forms were filed at institution level and legal notices were given to prison officials electronically SEE attached Exhibits A, C

2.    What did you claim in your grievance?

All claims as to violation of Plaintiff's constitutional Rights outlined in attached "CLAIM FOR DAMAGES AND INJUNCTIVE RELIEF DUE TO ILLEGAL TRANSFER, VIOLATION OF CONSTITUTIONAL RIGHTS AND FEDERAL LAW" SEE Exhibits A, C.

3.    What was the result, if any?   there was no Resolution. PROCESS FORMS were NOT RETURNED, was stalled due to denial of BP-9, BP-10, BP-11 forms and incompetency of counselor Jones. SEE attached electronic communication to counselor Jones. Warden was informed and did not address the issue with GRIEVANCE FORMS REQUEST. SEE Exhibit C.

4.    What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

Grievance process was stalled. I was denied forms needed to proceed to next appeal level.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

F.     If you did not file a grievance:

   1.   If there are any reasons why you did not file a grievance, state them here:

PLAINTIFF DID NOT FILE a GRIEVANCE at FCI-Dublin
because the PRISON was closed and all inmates were
shipped out, ADMINISTRATIVE Remedy was <u>NOT</u> available.

   2.   If you did not file a grievance but you did inform officials of your claim, state who you informed,
        when and how, and their response, if any:

ALL NOTICES SENT WERE SENT WITH "NOTICE TO AGENT IS NOTICE
TO PRINCIPAL AND NOTICE TO PRINCIPAL IS NOTICE TO AGENT," submitted
electronically to: Ms. SERRANO, Warden
                      R. MORRIS, Associate Warden;
selectively forwarded to R. Taylor, Captain; Chaplain; Unit Team.
Prison officials were noticed that Transfer was illegal and they are an
accommodation party on 6/4/2024. SEE EXHIBITS A, C

G.     Please set forth any additional information that is relevant to the exhaustion of your administrative
       remedies.

SEE Exhibits A, C FOR additional information.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your
administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying
the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility,
brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous,
malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent
danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☒ No   This is the FIRST Bivens action FILED during
          my entire period OF incarceration

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☒ No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s)   _____

Defendant(s)   _____

2.   Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.   Docket or index number

_____

4.   Name of Judge assigned to your case

_____

5.   Approximate date of filing lawsuit

_____

6.   Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition.   _____

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

C.   Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☒ No

D.     If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s)  _____

Defendant(s)  _____

2.   Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.   Docket or index number

_____

4.   Name of Judge assigned to your case

_____

5.   Approximate date of filing lawsuit

_____

6.   Is the case still pending?

☐ Yes

☐ No

If no, give the approximate date of disposition  _____

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

Pro Se 14 (Rev. 12/16) Complaint for Violation of Civil Rights (Prisoner)

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     6/24/2024

Signature of Plaintiff          *Without Prejudice All Rights Reserved*
Printed Name of Plaintiff       Julia  Teryaeva-Reed
Prison Identification #         57914-037
Prison Address                  FDC - Miami   P.O. Box 019120
                                Miami              FL      33101
                                *City*            *State*   *Zip Code*

### B.   For Attorneys

Date of signing:     _____

Signature of Attorney       _____
Printed Name of Attorney    _____
Bar Number                  _____
Name of Law Firm            _____
Address                     _____
                            _____
                            *City*        *State*     *Zip Code*
Telephone Number            _____
E-mail Address              _____

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Julia Teryaeva-Reed,

    Plaintiff

    v.                              Civil Case No._____

Colette S Peters, Bureau of Prisons Director;

William W. Lothrop, Deputy Bureau of Prisons Director;

Kathleen Toomey, Associate Bureau of Prisons Deputy Director;

Seth Bogin, Acting Chief Executive Officer Federal Prison Industries;

Melissa Rios-Marques, Bureau of Prisons Regional Director Western District;

and/or their successors/assigns, in individual and official capacity

CLAIM FOR DAMAGES AND INJUNCTIVE RELIEF

DUE TO ILLEGAL TRANSFER, VIOLATION OF CONSTITUTIONAL RIGHTS AND FEDERAL LAW

COMES NOW, Julia Teryaeva-Reed, hereinafter the "Plaintiff" and requests that Collette S. Peters, Director FBOP; William W. Lothrop, Deputy Director; Kathleen Toomey, Associate Deputy Director; Seth Bogin, Acting Chief Executive Officer Federal Prison Industries, and Melissa Rios-Marques, Bureau of

1

Prisons Regional Director for the Western District and/or their successors/assigns, collectively referred to as "Respondents", in individual and official capacity, pay monetary damages in the amount of $270,800.00 as a result of injuries, losses and irreparable harm done due to illegal transfer and continued violation of Plaintiff's numerous Constitutional rights, Federal Law and BOP Policy. Respondents are severally and jointly liable. In addition, Plaintiff requests injunctive relief to cease and desist continued violation of her constitutional rights at FDC Miami.

VENUE AND JURISDICTION

This action is brought under 42 U.S.C. Section 1983/Bivens for monetary damages and injunctive relief as authorized under 28 U.S.C. Sec. 2283. This Court has jurisdiction under 28 U.S.C. Sec. 1331 and 1343(a)(3). The venue for filing Bivens and 42 U.S.C. Sec. 1983 claim is United States District Court for the Northern District of California pursuant to 28 U.S.C. 139(b). This Court has supplemental jurisdiction over Plaintiff's state claims under 28 U.S.C. Sec. 1367.

EXHAUSTION REQUIREMENT SHOULD BE WAIVED

Exhaustion of Administrative Remedy, required under PLRA U.S.C.A. 1997e(a), was not available to Plaintiff at FCI Dublin due to its closure and immediate transfer of all inmates, and should be waived. Supreme Court held in Ross v. Blake, 136 S. Ct. 1850 (2016) that exhaustion requirement is waived where it is not available. Same in Tuckel v. Grover, 660 F. 3d 1249 (10th Cir. 2011). As to the continued violation of Plaintiff's Constitutional rights, Federal Law and BOP Policy, Plaintiff made reasonable effort to resolve the issue and started Administrative Remedy Process that was stalled due to no forms available and incompetency of the counselor Jones. See EXHIBIT C. In the alternative Plaintiff requests to hold this

motion in abeyance under FRCP 12(d) pending completion of her Administrative Remedy Process.

Supreme Court held in Jones v. Bock, 549 U.S. 199(2007) that prisoners do not need to show in their

complains that they have exhausted all grievance procedures. Same in Miles v. Corizon Med. Staff, 766

Fed. Appx. 626 (10th Cir. 2019); Torns v. Mississippi Dept. of Corrections, 301 Fed. Appx 386 (5th Cir.

2008).

ARGUMENT

STATEMENT OF FACTS

On or about April 18th, 2023 Julia Teryaeva-Reed was told to pack out and was given a green bag and

about twenty (20) minutes total to pack all her belongings. The next day she was placed on a bus

without medical clearance and taken on an 8-10 hour bus ride to a transfer center in Pahrump, Nevada,

where after 12 hour processing she spent total of 5 days. After that she was again put on the van, taken

to the airport, and flown to Georgia. From where she was put on another bus and taken to FDC Miami

on another 9-11 hour ride. After 5-6 hour processing in FDC Miami she was placed in general population.

During the transfer the Plaintiff had handcuffs, shackles and belly chain for a period of more than 52

hours, she sustained minor injuries and was subjected to numerous strip searches. As a result of the

transfer she lost her personal property, her good job at UNICOR, contact with friends and social ties. The

transfer adversely affected the processing of her halfway house application/placement to community,

extended her release date; affected time it took to refile her Motion for Compassionate Release and

Reduction in Sentence. Her detention in FDC Miami is a far departure from the sentence intended and

imposed by the sentencing court as FDC Miami has no access to law library, no outdoor recreation, no

work and no programming opportunities, no religious services for Buddhist religion. In other words,

3

Plaintiff's detention in FDC Miami is a continued violation of her constitutional rights, federal law and BOP Policy.

As an injured party, Plaintiff is seeking punitive damages in the amount of $250,000.00 and compensatory damages in the amount of $20,800.00.

TRANSFER WAS ILLEGAL

Said transfer was done in VIOLATION of the court order and was illegal. The Honorable Yvonne Gonzalez Rogers stated in her "ORDER RE CLOSURE OF FCI DUBLIN & PRELIMINARY INJUNCTION" that "The BOP's obfuscation is obvious. Its lack of transparency with the Court resulted in negative consequences. In fact, BOP Regional Director, Western Region Melissa Rios-Marques refused to advise Special Master Still of the impending closure, which would begin next day, even when asked directly on Sun. April 14." (California Coalition for Women Prisoners, Et al., v. US Bureau of Prisons, Et Al., Case No. 4:23-cv-04155-YGR, Dkt. 300 at 3, 4-7). See EXHIBIT B.

The closure of FCI Dublin and transfer of all inmates, including the Plaintiff in the instant case, were ILLEGAL in that inmates were not medically cleared, were given little or no time to pack out, and were taken on buses and shipped to various transfer centers and BOP locations that did not correspond to their rehabilitative, work/programming needs and were far from home. The transfer clearly violated Court order mandating in part to screen each individual PRIOR to transfer for "eligibility for community placements (i.e. home confinement, halfway house) or release". (Dkt. 300 at 3, 12-13).

The court required that

(i) the AICs be MEDICALLY CLEARED to transfer and provided medications needed during their transit to other facilities, which sometimes takes weeks." (Dkt. 300, at 5-6).

4

Not only the Plaintiff was NOT medically cleared but also she did not receive any of her medications that were renewed to be refilled and were available for pickup, after numerous requests.

DELAY AND ADDITIONAL TIME IN PRISON

Honorable Yvonne Gonzales Rogers emphasizes that "AIC were not released to community placement like halfway houses or home confinement on time. The Court ordered BOP to conduct casework reviews for every AIC BEFORE transferring them in order to ensure that the AIC were properly classified and their casework not subjected to additional administrative delays in connection with their transfer to new facilities" (Dkt. 300 at 6; 13-17).

Exactly the opposite took place, Plaintiff's case manager, Ms. Sharma, told the Plaintiff she would take care of the Plaintiff's paperwork: placement to halfway house and changing eligibility for the FSA time credits she has already earned, but informed the Plaintiff that it would be done upon Ms. Sharma's return from vacation. The next week Dublin was closed and inmates, including the Plaintiff in the instant case, were transferred to other BOP facilities and transfer centers. At the time of her appointment with case manager Sharma Plaintiff was already eligible for halfway house placement. It should be noted that placement of Plaintiff to halfway house, application of earned time credits under the FSA and resolution of ICE detainer were already delayed because of short staffing in Dublin due to class action. Ms. Sharma, case manager, was in and out due to high case load and no case managers on other units. Mr. Groover, unit manager, was walked off the compound. New unit manager, Mr. Blocker, came about 2-3 weeks before Dublin's closure. Mr. Blocker was working on ICE detainer that needed to be lifted by ICE so that the Plaintiff could be placed into the halfway house. Short staffing was addressed in the court order, stating in part: "a key component of FCI Dublin's dysfunction has been significant lack of adequate staffing (See e.g. Dkt No. 222 at 8-10). The facility's staffing levels have consistently remained at critically

low levels and impacted virtually every area of the facility. This jeopardized the AIC's health and safety, due process, access to programming, and basic rights". (Dkt. 300 at 4, 23-26) The court notes that "the Special Master also determined that FCI Dublin's casework systems were not current. As noted above, irregularities in existing AIC casework impacted AIC time credits and eligibility for community placements or release, among others". (Dkt. 300 at 7, 10-12).

Again, Dublin was shut down and Plaintiff was transferred without finalizing any of her paperwork that was already delayed due to shortstuffing in Dublin. Such sudden transfer of the Plaintiff caused her irreparable harm in that it substantially delayed the process with placement to the halfway house, application of the FSA time credits that were already earned, and removal of ICE hold due to Biden's executive order cancelling deportations to Ukraine. Inability to remove ICE hold will most likely result in Petitioner having to go to ICE detention and serving additional time in prison.

It was also true what Honorable Yvonne Gonzales Rogers stated in her order that: "the eligibility of Non-U.S. person AICs for community placement was misrepresented". (See Doc. 300 at 4, 12-13). Plaintiff was initially told by case manager Sharma that she could not be placed to halfway house because she was a Greencard holder and did not qualify.

Lastly, Plaintiff was holding off refiling her motion for sentence reduction under 18 U.S.C. Sec. 3582(c)(1)(A)(I)/Compassionate Release motion that was GRANTED by Court of Appeals but denied WITHOUT PREJUDICE on remand by the US District Court due to issue exhaustion. Petitioner raised new issues on appeal that were not exhausted at BOP level. She immediately filed her Administrative Remedy and completed required exhaustion process but did not refile because she was expecting to be released. Another delay was caused to filing Plaintiff's motion for sentence reduction by Public Defender, Sapna Mirchandani, based on United States Sentencing Commission Amendment 821 ("Zero-point offender" or

First Time Offender). Under that Amendment Plaintiff is eligible for immediate release but was unable to communicate to her attorney until her property and legal documents were given to her in FDC Miami.

Due to Dublin's closure and illegal transfer Plaintiff suffered irreparable harm and substantial delay in processing her paperwork for release, filing motions for compassionate release and sentence reduction resulting in prolonged time in prison and potentially additional time in ICE custody.

RETALIATION AND HARASSMENT

Inmates in FDC Miami were transferred in retaliation to other inmates speaking out about sexual harassment claims, protected by their First Amendment right, and in retaliation to the injunction imposed by the court and appointment of Special Master, Wendy Still. BOP demonstrated once again that once you speak out you will be shut down, literally and figuratively. But while inmates who spoke out were able to obtain settlements and immediate releases the rest of Dublin population became the victims of BOP's retaliation and abuse of power. Inmates were transferred out to prisons far from home, suffered interruption of programming, lost good jobs, lost social ties and contact with families, lost personal property, and suffered colossal financial losses. Most importantly inmates suffered delays in processing their community placements such as halfway houses, home confinement, delays in filing their motions for compassionate releases and reduction of sentence motions under the Amended Guidelines by the Sentencing Commission. Inmates with short sentences remaining like the Plaintiff in the instant case were affected the most as it adversely affected the timing and processing of their releases and community placements. Closure of FCI Dublin and transfer that bluntly violated court order constitute nothing but CONTEMPT OF COURT, punishable by imprisonment of prison officials and fine.

In Siggers-El v. Barlow, 433 F. Supp. 2d 811 (E.D. Mich. 2000) a prisoner received $200,000.00 in PUNITIVE DAMAGES after he was TRANSFERRED IN RETALIATION to complaining to the Warden about a

7

prison official who harassed the prisoner and refused to put in routine paperwork the prisoner needed to pay his appellate lawyer. The transfer ended up causing prisoner to loose a very good prison job and contact with family. The prisoner also received $19,000.00 in compensatory damages.

LOSS OF PROPERTY AND OTHER DAMAGES

On or about April 18th, Plaintiff was given twenty minutes to pack all her property, including legal documents, in one green duffle bag. The property was sorted out by the staff and Plaintiff had to throw away nearly half of her property due to limitation placed on transfer: some items were not allowed, some items were limited in quantity; all items that were opened had to be thrown away, all items that were not in their "original" condition were considered "contraband" and were thrown away, there were items that were no longer sold on commissary and were not permitted to be taken. All arts and crafts items  were left behind. All items (books, legal materials, drafts and research for Plaintiff's book she was planning on publishing upon release) given to other inmates could not be timely picked and were left behind. There were items that had to be purchased and then thrown away while waiting for property to arrive in MDC Miami and there were items that had to be worn and used before Plaintiff was sent out and after the property was packed out (clothes', shoes, shower bag, etc). Some items had to be discarded upon arrival at FDC Miami and could not be used like copy cards, typewriting tapes, battery operated clock, radio, and book light. (There is no copy machine, no typewriter and no batteries sold on commissary at MDC Miami). The losses were colossal to say the least. Many items were traded or gifted and had no receipts, other items had sentimental value that can not be compensated for. Upon arrival at FDC Miami Plaintiff was unable to retrieve electronic record of ANY receipts from Dublin.

Plaintiff brings property loss as part of this claim for damage or loss under Title 31 U.S.C. Sec. 3721(a)(1)

for following reasons: first, BOP systematically denied claims for damage or loss under 31 U.S.C. Sec.

3723 because property is labeled as "UNSECURED", second, dollar value of the items is based on

"depreciated" value and not "market value" and constitutes far departure of what lost items were

actually worth; third, the income that could be derived from items lost is not accounted for (i.e. arts and

crafts items, unfinished projects that were left behind; book publishing revenue); fourth, sentimental

value of personal items is not accounted for; fifth, the receipts of purchases can not be retrieved by

inmates on their computers in FDC Miami, and there is no copier or law library to make copies; sixth,

items that were gifted or traded, which is a common practice, had no receipts; seventh, Plaintiff has no

faith in BOP to do the right thing and grant the claim after they bluntly violated court order and shipped

inmates to various BOP locations disregarding human lives or humanitarian concerns. BOP is in

CONTEMPT OF COURT and Plaintiff can not rely on BOP to do the right thing on inmate's request when

BOP disregards court orders.     SEE   Exhibit A.


CONTINUED VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS, FEDERAL LAW AND BOP POLICY


The Court notes that "shortly after the court issued a preliminary injunction to protect the

constitutional rights of the AIC housed at FCI Dublin and appointed Special Master to assist therewith,

the BOP announced its decision to shutter FCI Dublin and relocate the population" (Dkt 300 at 1, 19-22).

The Court emphasized "BOP's REPEATED and INTENTIONAL disregard of the AIC's constitutional rights"

(Dkt 300, at 2, 15-16). The Court concludes that while the need to address some of the issues at Dublin

are now moot, the AIC remains a "protected class" and emphasizes the need of "continued monitoring

of class members' welfare and protection of their constitutional rights" (Dkt 300, p. 10-12). The intention

9

of the court was to protect prisoner's constitutional rights, however, they are continued to be violated and to a far greater extend than before.

At FDC Miami Plaintiff's constitutional rights are violated to a much greater extend than in FCI Dublin in that:

1. FDC MIAMI has NO LAW LIBRARY with printer, copier, required legal materials, typewriter, and space adequate for preparation of legal materials. The issue is especially vital given pending class action, the need to refile Plaintiff's compassionate release motion, research needed for Plaintiff's motion for sentence reduction (First Time Offender Law, or "Zero Point Offender", USSC Amendment 821), resolution of ICE Detainer, refiling of 2241 for FSA Time Credit application, and all other re-entry related matters. Deprivation of law library significantly affects Plaintiff's ability to conduct legal research necessary to litigate her case and violated her right to access courts, and otherwise. (See LEGAL NOTICES given on 4/30/2024 and 5/25/2024 in EXHIBIT A).

2. FDC MIAMI has NO OUTDOOR RECREATION unlike all other BOP prisons. It constitutes violation of the Fourteenth Amendment that provides "equal protection under the law" meaning that BOP can not make special rules or give special benefits to one group of inmates while depriving others of the same benefits. The court held that "the Constitution REQUIRES jail officials to provide OUTDOOR recreation opportunities..." Shorter, 895 F. 3d at 1185-86, see also Pierce v. Cty of Orange, 526 F. 3d 1190, 1208 (9th Cir. 2008). In McGray v. Lee, 963 F. 3d 110 (2nd Cir. 2020) court held that deprivation of OUTDOOR exercise alone constitutes violation of the Eighth Amendment and actionable under Title 42 U.S.C. Sec.

10

1983, and in Hearns v. Terhune, 413 F. 3d 1036 (9th Cir. 2005) the court held that it is a violation of the Eighth Amendment when prisoners are deprived of OUTDOOR recreation for long periods of time. In case of Plaintiff in the instant case there is no outdoor recreation at all and she is PERMANENTLY deprived of outdoor recreation for the remainder of her sentence.

Plaintiff spent three years and ten month in various pre-trial facilities and almost three years on lockdown due to COVID-19 in FCI Aliceville where conditions were very restrictive and there was no outside recreation. As a result she is now suffering from PTSD, anxiety and many other psychological conditions. Her confinement in FDC Miami with no outside recreation and constant lockdowns has a retraumatizing affect adversely affecting her mental health, physical health, overall well being and productivity, and jeopardizes successful re-entry into society. (See LEGAL NOTICES sent on 4/30/2024 and 5/28/24 in EXHIBIT A for more info and supporting case law).

3. FDC MIAMI has NO BUDDHIST RELIGIOUS SERVICES and Plaintiff is unable to practice her religion, in violation of the Free Exercise Clause of the First Amendment which states in part: "Congress shall make no law respecting an establishment of religion, OR PROHIBITING THE FREE EXERCISE THEREOF..."; violation of the Fourteenth Amendment's "equal protection clause" which means a prison can NOT make special rules or give special benefits to one religious group and deprive the others of the same benefits; and violation of the Federal Law- The Religious Freedom Restoration Act (RFRA) and Religious Land Use and Inst. Persons Act (RPLUIPA). In 2005 the United States Supreme Court found RPLUIPA constitutional in Cutter v. Wilkinson, 544 U.S. 709 (2005). The court held that facility that accepts federal funds can NOT DENY prisoners necessary accommodations to engage in activities for the practice of their own religious beliefs. Plaintiff requested to attend religious services and was told that they are provided only to men and not women in FDC Miami and there is no accommodation possible due to few women in FDC Miami.

\\

(See LEGAL NOTICES sent on 4/30/2024 and 5/18/2024 in EXHIBIT A for more info and supporting case law).

4. FDC MIAMI offers NO VIDEO VISITS and has RESTRICTED 1-HOUR IN PERSON VISITATION POLICY unlike all other BOP prisons that have free and unlimited video visitation under the CARES ACT, and two full-day in person visits. Permanent ban on video visits and restricted 1 hour visitation policy is in violation of the First Amendment to freedom of association, Eighth Amendment right to be free from cruel and unusual punishment, Fifth and Fourteenth Amendment rights to substantive due process, equality under the law and procedural due process. As Plaintiff is approaching her release it is essential for her to maintain social contact with outside world to ensure successful re-entry. While Restriction on video visitation privileges' is ordinarily imposed as PUNISHMENT in the instant case Plaintiff did NOT violate any BOP Policy; and PERMANENT ban on visitation was held unconstitutional in Whitmire v. Arizona, 298 F. 3d 1134 (9th Cir. 2002). (See LEGAL NOTICES given on 4/30/2024 and 5/24/2024 in EXHIBIT A for more info and supporting case law).

5. FDC MIAMI offers no meaningful WORK OR PROGRAMMING OPPORTUNITIES, in violation of the First Step Act, codified in Title 18 U.S.C. Sec. 3632, 3621, stipulating in part that "EVERY INMATE" should be given work and programming opportunities; same in BOP Program Statement 5220.01. Because FDC Miami is predominantly male prison very few opportunities are offered for women. At FCI Dublin Plaintiff was employed at UNICOR where average wages after training were $200-$300/month and one could earn up to 500 credit hours under the First Step Act. It is also a violation of the Fourteenth Amendment that prohibits discrimination based on sex or gender. (See LEGAL NOTICES given on 4/30/2024 and 5/31/2024 in EXHIBIT A for more info and supporting case law).

12

6. FDC MIAMI is comparable to SUPERMAX as the LOCKDOWN time exceeds that in other prisons. Inmates are on lockdown on average 6 hours a day during normal out-of-cell hours. Such restrictive confinement is detrimental to Plaintiff's mental health and adversely affects her right to access courts. (See LEGAL NOTICES given on 4/30/2024 and on 5/25/2024)

#7 In FDC MIAMI inmates from FCI Dublin are continuing to experience HARASSMENT AND RETALIATION in violation of their constitutional rights. Dublin inmates are being harassed and intimidated in violation of the Eighth Amendment. The Court held in Hudson v. Palmer, 468 U.S. 517, 530 (1984) that "calculated harassment unrelated to prison needs" can also violate the Eighth Amendment under Farmer v. Brennan, 511 U.S. 825 (1994) ( "prison officials have a duty to protect prisoners from violence at the hands of other prisoners"). Inmates from Dunlin are being constantly harassed, intimidated and threatened by other "local" inmates due to scandal in Dublin. Once Dublin inmates arrived at FDC Miami male officers were removed, staff became strict, rules started being enforced. We observed routine shake downs with confiscation of property, room inspections, verbal and written notices that sexual behavior on the part of the inmates will not be tolerated and will be punished. (See EXHIBIT A).

#8. LIVING CONDITIONS at FDC MIAMI are comparable to SUPERMAX or SHU, punitive segregation, in that the lights in cells are not regulated and are on from 6am till 11pm (past lockdown time, while even in the SHU the lights get turned off at lockdown), resulting in sleep deprivation. In Walker v. Schult, 717 F. 3d 119 (2nd Cir. 2013) it was held that sleep deprivation violated Eighth Amendment. Mattress sizes are half the normal size. Inmates are given only one blanket while all other BOP facilities provide two blankets. Warden Serrano made an allowance to crochet one blanket but it takes 9-10 skins of yarn and costs $60-120 to make it. After the colossal losses of property and income this is not what one can

13

afford. FDC Miami is constantly undergoing maintenance and repairs, most cells have plumbing issues

and mold. Laundry is done only twice a week, Friday and Monday, and comes back wet and smelling.

FDC Miami has no call out system like the SHU. In terms of living conditions, operations and

management FDC Miami constitutes a far departure from FCI Dublin and other BOP prisons.


TOTALITY OF CIRCUMSTANCES, TRANSFER AND CONSTITUTIONAL RIGHTS VIOLATIONS


   While illegal transfer to another institution is a violation of constitutional right in itself, a transfer to a

high security institution and continued detention in restrictive conditions depriving Plaintiff from

accessing law library, outside recreation, video visitation, Buddhist religious services, work and

programming opportunities; institution that is constantly locked down and operates like SUPERMAX or

SHU is a violation of Plaintiff's First, Fifth, Eighth, and Fourteenth Amendments.

 Plaintiff asks to consider TOTALITY OF CIRCUMSTANCES of all enumerates issues supra. See Palmer v.

Johnson, 193 F. 3d 346 (5th Cir. 1999), Wilson v. Seiter, 501 U.S. 294 (1991).

  In Wilkinson v. Austin, 545 U.S. 209 (2005) it was held that TRANSFER to SUPERMAX where there was

almost no human contact, 24-hour lighting, no outside recreation was a violation of prisoner's

constitutional rights. In Aref v. Lynch, 833 F. 3d 242 (D.C. Cir. 2016) the court decides that TRANSFER to

Communications Management Unit (CMU) created liberty interest under Sandin standard and violated

Fourteenth Amendment. In Allah v. Seiverling, 229 F. 3d 220 (3rd Cir. 2000) it was held that prison

officials must not use TRANSFER or segregation to restrict your access to courts. Because of transfer

inmates were subjected to numerous strip down searches, inflicted as a result of transfer when they

could be released to community. It was held in Crawford v. Cuomo, 796 F. 3d 252 (2nd Cir. 2015) that

14

strip and pat-down searches to be cruel and unusual punishment in violation of the Eighth Amendment.

Same in Sconiers v. Lockhart, 948 F. 3d 1256, 1266-67 (11th Cir. 2020).

The courts held that even SHORT PERIODS in harsh conditions can constitute violation of constitutional rights.

In Palmer v. Richardson, 364 F. 3d 60 (2nd Cir. 2044) the court considered 77 days to be sufficient. Similar short time was recognized in Gillis v. Litscher,468 F. 3d 495 (7th Cir. 2006); Mitchell v. Horn, 318 F. 3d 523 (3rd Cir. 2003).

PRISON OFFICIALS' ACTIONS WERE KNOWING, INTENTIONAL & DELIBERATE

 The decision to close FCI Dublin, in violation of the court order stipulating to screen inmates PRIOR to transfer for release to community, compassionate releases, halfway houses, etc or to transfer to CORRECT BOP facilities; and to medically clear inmates prior to transfer was made knowingly, intentionally and deliberately with full knowledge of the harm and losses it would cause to the AIC and the Plaintiff, discussed supra. Likewise, at FDC Miami prison officials were NOTICED of numerous violations of Constitutional rights, Federal Law and BOP Policy by electronic cop-outs and through grievance process (See Exhibit A), and KNOWINGLY, INTENTIONALLY, and DELIBERATELY continue to violate Plaintiff's Constitutional rights, Federal law and BOP policy, with full knowledge of the consequences of their actions and/or acts of omission, and the harm to the Plaintiff.

BREACH OF OFFICIAL DUTY AND NO IMMUNITY

15

The prison officials were acting under the color of state law and are in breach of their official duty. The breach of duty occurs at any time when prison officials violate Federal Law, BOP Policy, judicial order, or constitutional rights. In Yosuf v. United States, 642 F. Supp. 415 (M.D. Pa 1986) Bureau of Prisons breached a duty to let a prisoner make legal calls to his attorney based on the language from the Code of Federal Regulations. Qualified immunity does NOT apply because named Respondents were personally involved in violation of Plaintiff's constitutional rights, violation of court order, Federal law and BOP Policies. Restated, prison officials were acting knowingly, intentionally and deliberately. See Saucier v. Katz, 533 U.S. 194 (2001), Harlow v. Fitzgerald, 457 U.S. 800 (1982); Taylor v. Rojas, 141 S. Ct. 52 (2020).

INJURY DUE TO VIOLATION OF CONSTITUTIONAL RIGHTS, FEDERAL LAW AND BOP POLICY

While it is clear that Plaintiff suffered irreparable harm, minor physical injuries while in transfer, loss of property, wages and other income, emotional distress, loss of social ties, interruption of work and programming, delay in processing of her community release and other legal matters, the violations of Constitutional Rights do NOT require showing of an "injury" as the violation of Constitutional Rights is an INJURY IN ITSELF. See King v. Zamira, 788 F. 3d 207, 213 (6th Cir. 2015); Aref v. Lynch, 833 F. 3d 242 (D.C. Cir. 2016); Canell v. Lightner, 143 F. 3d 1210 (9th Cir. 1998); Robinson v. Page, 170 F. 3d 747 (7th Cir. 1999); Thomson v. Carter, 284 F. 3d 411 (2nd Cir. 2002); Cockroft v. Kirkland, 548 F. Supp. 2d 767 (W.D. Cal. 2008) It was held that "First Amendment violations rarely, if ever result in physical injuries, construction of the PLRA against recovery of damages would defeat congressional intent and render constitutional protections meaningless. If Sec. 1997e(2) is applied to foreclose recovery in First Amendment actions, it would place the First Amendment itself "on shaky ground" Siggers-El v. Barlow, 433 F. Supp. 2d. 811, 816 (E.D. Mich. 2006).

16

PRAYER FOR RELIEF

   WHEREFORE NOW, above premises considered Plaintiff is asking to remedy irreparable harm she

suffered as a result of transfer and continued violation of her Constitutional rights, Federal Law and BOP

policy by prison officials who acted knowingly, intentionally and deliberately; and to to award her

punitive damages in the amount of $250,000.00, compensatory damages in the amount of $20,800.00,

and attorney fees as authorized under 28 U.S.C. Sec. 1915 if one is appointed; and an injunction- to

cease and desist continued violation of Plaintiff's Constitutional rights, Federal Law and BOP policy at

FDC Miami. In the alternative to the injunctive relief Plaintiff proposes to order her released to home

confinement, or halfway house, or to transfer her to another BOP facility that offers work and

programming opportunities recommended to her by the sentencing court (FCI Tallahassee was

recommended by sentencing court. FCI Tallahassee offers RDAP and FIT that were recommended by the

sentencing judge and same UNICOR facility as in FCI Dublin where Plaintiff used to work). Plaintiff is

asking to construe her claim liberally in light of Haines v. Kerner, 04 US 519, 520-521 92 S. Ct 594, 30 L.

Ed. 2s 652 (1972) holding that pro se litigants are to be held to a lesser standard of review than lawyers

who are formerly trained in law and are entitled to a liberal construction of their pleading.

Respectfully Submitted,

By:_____

*Without Prejudice All Rights Reserved*
Julia Teryaeva-Reed
*UCC +20 I ; UCC 1-308*

VERIFICATION

17

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to the matters alleged on information and belief, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true, correct and complete to the best of my knowledge and belief.

Date: _6/24/2024_

By: _____

Julia Teryaeva-Reed
Without Prejudice, All rights Reserved
UCC 1-207, 1-308

CERTIFICATE OF SERVICE

I, Julia Teryaeva-Reed, certify under the penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief and that CLAIM FOR DAMAGES AND INJUNCTIVE RELIEF DUE TO ILLGEAL TRANSFER, VIOLATION OF CONSTITUTIONAL RIGHTS, FEDERAL LAW AND BOP POLICY was mailed to the United States District Court for the Northern District of California at 450 Golden Gate Ave, Box 36060, San Fransisco, CA 94202 on this _24th_ day of June, 2024 via first class mail postage pre-paid. USPS Certified Mail # 9589 0710 5270 0957 4144 69

Date: _6/24/2024_

By: _____

Julia Teryaeva-Reed
Without Prejudice, All Rights Reserved
UCC 1-207, 1-308

18